IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PATRICK DANIEL KENNY,<br><br>　　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. CR 05-0079 WHA<br><br>**ORDER DENYING MOTIONS<br>TO SUPPRESS AND FOR<br>EVIDENTIARY HEARING** |

## INTRODUCTION

In this case alleging that Patrick Daniel Kenny was a felon in possession of a firearm, he moves to suppress evidence taken from a Mercedes he was driving, from his person and from the garage where he lived. He also asks for exclusion of any statements, police observations and additional evidence made or obtained as a result of the searches. In addition, he moves for an evidentiary hearing to resolve alleged factual disputes.

To be sure, some of the conduct challenged by Mr. Kenny was arguably unnecessarily aggressive. The police actions nevertheless fell within well-established exceptions to the warrant requirement. His rights were not violated. The motions therefore are **DENIED**.

## STATEMENT

Officer Richard Parry was crossing Larkin Street mid-block, outside of the crosswalk and at night. The street was busy with cars and pedestrians. Officer Parry, a 26-year veteran of the force, was accompanied by several other officers, all in plain clothes but with their police badges hanging from their necks.

Defendant Kenny was a few yards down the street from the officers. He was backing a Mercedes out of traffic and into a double-parked position. The officers apparently saw their path would cross that of Mr. Kenny's car. Officer Parry and another officer changed course and walked several feet down the street so that they could pass in front of car. Before he stepped immediately in front of the car, Officer Parry signaled with his hand to alert the driver. Officer Parry says he made eye contact with Mr. Kenny. (Defendant denies that.) Just after Officer Parry walked in front of the car, defendant revved its engine and the car lurched forward several feet, stopping suddenly just short of colliding with the officer. One reasonable interpretation of the event, from the perspective of the officers at the time, was that the driver was operating his car in a menacing and dangerous manner.

Officer Parry immediately went to the passenger-side front door. He banged on the windshield with his hand and opened the door. A security camera outside a nude-dancing establishment filmed all of the foregoing. Inside the car, Officer Parry snatched the keys out of the ignition. To do so, he leaned across Tonya Higginbottham, the passenger, pinning her neck and chest against the seat with his arm.

One of the other officers, Inspector David Martinovich, then opened the driver-side door and demanded Mr. Kenny's driver license. He complied. A third officer, Inspector Halloran, asked defendant if he was on parole. Mr. Kenny said that he was, for drug violations. Inspector Martinovich ordered him out of the car. As Mr. Kenny leaned to get out, he reached behind his back with his right hand.[1] Inspector Martinovich believed defendant was hiding drugs, so he grabbed Mr. Kenny's right wrist and ordered him not to reach for anything. Inspector Martinovich asked if defendant had a gun. "Ya," responded Mr. Kenny. Inspector Halloran then grabbed defendant's other arm and the officers took defendant out of

---

[1] During argument on this motion, defense counsel said that Mr. Kenny told him he was simply reaching to unlatch his seat belt. No declaration on this point was provided in support of the motion and so it will not be considered. Even if it were proven, however, the Court would deny the motions because what matters is that the officer could reasonably have interpreted the move as an effort to reach for a gun. This interpretation was reasonable in light of the apparent attempt to assault the officer with the car, Mr. Kenny's parole status for drug offenses, the fact that drug dealers often carry firearms and Mr. Kenny's suspicious reach behind his back.

2

1  the car. They found a loaded .38-caliber pistol tucked inside Mr. Kenny's waistband at the
2  small of his back.
3      Immediately, Inspector Martinovich searched Mr. Kenny's person, finding seizing a
4  telephone, $1,041 in cash and Ziploc bags of suspected methamphetamine. In the car, police
5  found and seized Ms. Higginbottham's purse, where someone had secreted more suspected
6  methamphetamine and $908. Police arrested both and took them to jail. The Mercedes was
7  searched again later, and police discovered and seized white powder residue, pills, suspected
8  MDMA (Ecstasy), handcuffs and a 10-mm semiautomatic pistol inside a bag with
9  Ms. Higginbottham's name on it. Other officers went to the garage in San Francisco where
10 Mr. Kenny lived. There they seized suspected MDMA tablets, suspected methamphetamine, a
11 sawed-off shotgun, shotgun rounds and a sheet that recorded drug transactions.

## ANALYSIS

13 Defendant argues that Officer Parry and Inspector Martinovich did not have a
14 reasonable, articulable suspicion that crime was afoot when they stopped the Mercedes and
15 detained Ms. Higginbottham and Mr. Kenny. The only reasonable conclusion for the
16 near-collision, suggests Mr. Kenny, is that he accidentally let the car lurch forward.
17     Possibly all that happened was accidental. But when police witness menacing and
18 dangerous conduct, they are not required to indulge the benefit of the doubt. We would be
19 disappointed in our police if they walked away from potential crime scenes on the theory that it
20 was probably just a mistake. They may stop a person to investigate any situation in which
21 crime is a reasonable possibility, so long as they have an articulable reason for so believing.
22 *See generally Terry v. Ohio*, 392 U.S. 1 (1968); s*ee also United States v. Lopez-Soto*, 205 F.3d
23 1101, 1104–05 (9th Cir. 2000) (only reasonable articulable suspicion needed for traffic stop).
24     Officer Parry and Inspector Martinovich had a good reason to suspect that crime or
25 traffic violations had occurred. They were not paranoiacs acting on an "inchoate and
26 unparticularized . . . hunch." *Terry*, 392 U.S. at 27. Sadly, it is not uncommon for drivers
27 deliberately to crash their cars into officers (or to try to). This Court has had exactly such cases.
28 The events gave rise to a substantial suspicion that Mr. Kenny was acting in a menacing and

3

dangerous manner and had assaulted Officer Parry, thus violating California Penal Code Section 245(a)(1) (assault with a deadly weapon). The officers had a duty, not just an excuse, to investigate. Assuming for argument's sake that assault was an unreasonable suspicion, there were several traffic violations that would have entitled the police to stop Mr. Kenny and investigate: double-parking, driving too fast and not being careful to avoid pedestrians.[2]

Mr. Kenny argues that because Officer Parry was jay-walking, he created the dangerous situation that caused the near-accident. His counsel argues that we would sanction a new trick were we to find reasonable articulable suspicion in such a situation. The trick would be for police to jay-walk in front of moving cars, claim the driver failed to exercise due care, then use the near-collision to justify a *Terry* stop. This is not what happened here, as the video amply demonstrates.

Mr. Kenny argues that even if an investigative stop was justified, Officer Parry and Inspector Martinovich exceed its legitimate scope by banging on the windshield, opening the car doors, grabbing the keys and pinning Ms. Higginbottham to her seat. The officers should have simply approached Mr. Kenny and asked questions, he claims.

It is true that Officer Parry's banging on the windshield probably was animated. Officer Parry was entitled, in light of what had just happened, to get the driver's attention. The officers targeted their other actions to investigating legitimate suspicions and protecting public safety. It was a prudent move to open the passenger-side door and snatch the keys, given the reasonable suspicion that the driver was acting in a dangerous and menacing manner. Officer Parry was closer to the passenger-side door than to the driver-side door when it mattered most. Given the exigency dictated by public safety, it therefore was proper for him to seize the keys through that door rather than through the driver-side door. In addition, both sides recognize that it would have been lawful at that moment for police to order defendant out of the car. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 & n.6 (1977). Once the police saw Mr. Kenny evidently reaching behind his back, they properly widened the scope of their questioning by asking about a gun.

---

[2] Cal. Veh. Code §§ 22500(h) (double-parking), 22350 (speed) & 21954(b) (due care for pedestrians).

Mr. Kenny next argues that the investigative stop was so aggressive and intrusive that it became a *de facto* arrest that was impermissible because police lacked probable cause to suspect crime. To address this argument, the Court considers the totality of the circumstances in the context of each individual stop. *See Washington v. Lambert*, 98 F.3d 1181, 1185–1186 (9th Cir. 1996). Factors to consider include how aggressive police were (and, from a different angle, how much the suspect's liberty was restricted), the duration of the stop and the justification for the particular tactics police used. *Id.* at 1185.

Mr. Kenny's strongest argument on this point is that it was unduly threatening to bang the windshield and pin Ms. Higginbottham to the seat. These facts, however, do not raise this *Terry* stop the level of an arrest. As stated above, banging on the windshield was reasonable to get the driver's attention. Banging on the windshield, which did no harm, was only minimally restrictive. The momentary pinning of Ms. Higginbottham to her seat was incidental to seizing the keys to stabilize a potentially dangerous situation. Finally, once police knew Mr. Kenny was on parole, they only needed reasonable suspicion to proceed. Parolees consent to searches of their persons, property and any property under their control. To conduct such a search, police need only reasonable suspicion, which they had in this case.

## CONCLUSION

For the reasons stated above, the motion to suppress evidence is **DENIED**. The declarations and other evidence submitted with these motions do not put into dispute any facts the resolution of which would alter this Court's decision. The motion for an evidentiary hearing is therefore denied, there being no disputed facts whose verification would affect the outcome of this motion.

**IT IS SO ORDERED.**

Dated: October 6, 2005.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5